HAMILTON, Circuit Judge,
concurring in the judgment:
The issue presented in this appeal is straightforward: whether, at the time of their conduct, the actions of Shingleton and Collins violated “clearly established statutory or constitutional rights of which a reasonable person would have known.” Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). At the time of their actions, Brady and its progeny made clear that a defendant’s due process rights were violated when the prosecution failed to disclose material exculpatory or impeachment evidence to the defense, regardless of whether the prosecutor acted in bad faith or even knew of the evidence. See Giglio v. United States, 405 U.S. 150, 153-54, 92 S.Ct. 763, 765-66, 31 L.Ed.2d 104 (1972). Although the Supreme Court has not explicitly addressed the disclosure duties of police under Brady, our case law at the time of Shin-gleton and Collins’ actions clearly established that a defendant’s due process rights were violated when the police concealed material exculpatory or impeachment evidence. Barbee v. Warden, 331 F.2d 842, 846 (4th Cir. 1964); see also Boone v. Paderick, 541 F.2d 447, 450-51 (4th Cir.1976) (duty to disclose not “neutralized because [evidence] was in the hands of the police rather than the prosecutor”), cert. denied, 430 U.S. 959, 97 S.Ct. 1610, 51 L.Ed.2d 811 (1977).[1] As the Barbee court explained:
*-465 Nor is the effect of the nondisclosure neutralized because the prosecuting attorney was not shown to have had knowledge of the exculpatory evidence. Failure of the police to reveal such material evidence in their possession is equally harmful to a defendant whether the information is purposefully, or negligently, withheld. And it makes no difference if the withholding is by officials other than the prosecutor. The police are also part of the prosecution, and the taint on the trial is no less if they, rather than the State’s Attorney, were guilty of the nondisclosure. If the police allow the State’s Attorney to produce evidence pointing to guilt without ever informing him of other evidence in their possession which contradicts this inference, state officers are practicing deception not only on the State’s Attorney but on the court and the defendant....
The duty to disclose is that of the state, which ordinarily acts through the prosecuting attorney; but if he too is the victim of police suppression of the material information, the state’s failure is not on that account excused.
331 F.2d at 846 (footnote omitted).
Accordingly, this ease boils down to whether a reasonable officer in Shingleton and Collins’ position would have known, when he/they acted, that the exculpatory and impeachment evidence allegedly with held from the prosecutor was material. At the time of Shingleton and Collins’ actions, the materiality standard set forth in United States v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), governed. The Court in Agurs distinguished between three situations in which a Brady claim might arise: (1) where the prosecutor introduced testimony that he knew or should have known was false; (2) where the government failed to disclose a specific kind of exculpatory or impeachment evidence requested by the defendant; and (3) where the government failed to disclose exculpatory or impeachment evidence never requested, or requested in a general way. Under the false testimony standard, the Court noted that it had consistently set aside convictions obtained by the knowing use of false testimony when there was “any reasonable likelihood that the false testimony could have affected the judgment of the jury.” Id. at 103, 96 S.Ct. at 2397 (footnote omitted). Under the specific request scenario, the Court noted that when the government failed to disclose a specific kind of exculpatory or impeachment evidence requested by the defendant, that failure, was “seldom, if ever, excusable.” Id. at 106, 96 S.Ct. at 2399. The Court went on to hold that under the no/general request scenario, the government failed in its duty to disclose when suppression of the evidence would be “of sufficient significance to result in the denial of the defendant’s right to a fair trial.” Id. at 108, 96 S.Ct. at 2400. In other words, if the undisclosed evidence created “a reasonable doubt that did not otherwise exist,” there was constitutional error. Id. at 112, 96 S.Ct. at 2402.[2]
In my opinion, at the time of Shingleton and Collins’ actions, a reasonable officer would have known that the evidence allegedly withheld would have created “a reasonable doubt that did not otherwise exist.” Id. To appreciate and understand the significance of the audio recordings and the accompanying *-464 reports of the hypnosis of Wilson and Shin-gleton, it is crucial to recognize that the state’s case hinged on the identification of Jean by Wilson and Shingleton. As we recognized in our earlier opinion:
[T]here was little independent corroborating evidence to sustain Jean’s conviction: there were no fingerprints or matching pubic hairs; the blood/semen test only placed Jean in the same 32% as the rapist; and the voice exemplar was of dubious quality, had only one black voice on it, and presented difficulty to Ms. Wilson, causing her to take one week to make her identification.
Jean v. Rice, 945 F.2d 82, 87 (4th Cir.1991). Because there was little independent evidence of guilt outside the inconclusive identification evidence, a reasonable officer would have known that the audio recordings and accompanying reports of the hypnosis of Wilson and Shingleton would have created “a reasonable doubt that did not otherwise exist.” Agurs, 427 U.S. at 112, 96 S.Ct. at 2402. Indeed, it cannot be denied that the audio recordings and the accompanying reports of the hypnosis of Wilson and Shingle-ton contained numerous inconsistencies with previous descriptions of the assailant and that the hypnotic techniques were suggestive. For example, as to Shingleton, under hypnosis, the stripe on the t-shirt became a sweatmark, and the mustache disappeared. In addition, Shingleton recalled white shoelaces and striped socks under hypnosis, but Jean’s shoelaces were black and his socks had no stripes. Finally, he recalled glassy eyes under hypnosis despite his earlier statement that he could not see the suspect’s eyes. Along a similar vein, Wilson’s inability to identify Jean as the assailant until after she underwent a very suggestive hypnosis made the audio recordings and the accompanying reports of the hypnosis all the more critical. All of this evidence not only was critical to impeach the testimony of Wilson and Shin-gleton, but it strongly suggested that someone else committed the crime. In short, the audio recordings and the accompanying reports of the hypnosis went directly to the heart of the state’s case — whether Jean, as opposed to someone else, committed the crime — and should have been disclosed.

. We have recognized that a police officer's failure to disclose exculpatory evidence that should have been disclosed under Brady is cognizable under § 1983. See Carter v. Burch, 34 F.3d 257, 263-64 (4th Cir. 1994) (affirming jury verdict against police officer for withholding exculpatory *-465 evidence that should have been disclosed under Brady), cert. denied, — U.S. —, 115 S.Ct. 1101, 130 L.Ed.2d 1068 (1995).

. The materiality standard was modified in subsequent Supreme Court cases. In United States v. Bagley, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985), the Court disavowed any difference between exculpatory and impeachment evidence and abandoned the distinction between the second and third Agurs scenarios. In Bagley, the Court held that evidence was material if “there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Id. at 682, 105 S.Ct. at 3383 (opinion of Blackmun, J.); id. at 685, 105 S.Ct. at 3385 (White, J., concurring in part and concurring in judgment). "A 'reasonable probability’ is a probability sufficient to undermine confidence in the outcome[of the trial.]” Id. at 682, 105 S.Ct. at 3383. Following Bagley, the Court has consistently adhered to the Bagley standard. See, e.g., Kyles v. Whitley, 514 U.S. 419, —, 115 S.Ct. 1555, 1566, 131 L.Ed.2d 490 (1995) (“A ‘reasonable probability’ of a different result is accordingly shown when the Government’s evidentiary suppression ‘undermines confidence in the outcome of the trial.' " (quoting Bagley, 473 U.S. at 678, 105 S.Ct. at 3381)).